## A00A1800. PENLAND v. CORLEW et al.
### (547 SE2d 306)

SMITH, Presiding Judge.

In this appeal, we consider whether the trial court was authorized to grant an interlocutory injunction. Attorney S. Perry Penland appeals a temporary restraining order enjoining him from proceeding with four pending cases filed in Florida state court, all relating to the disposition of funds interpleaded with the Superior Court of DeKalb County. We also review the grounds under which a judge may be disqualified under Uniform Superior Court Rule 25. Because we conclude that the trial court did not manifestly abuse its discretion in granting the injunction and that Penland's motion to disqualify the trial judge failed to meet the timeliness requirement of USCR 25, we affirm.

While this litigation is in its early stages and the record is not fully developed, many facts are essentially undisputed, as set out in a federal district court order entered on an earlier remand from federal jurisdiction. The parties are involved in a dispute over attorney fees and costs in another lawsuit. In 1993, appellee Dr. Leonard Masters, a Florida physician, retained Eric S. Block of the Jacksonville, Florida, law firm of Penland & Penland to represent him in a medical malpractice action. Appellant Penland was also a member of that firm. In late 1993, Block contacted and retained Harold D. Corlew, a Georgia attorney, to serve as local counsel against several Atlanta defendants. Corlew agreed and filed the malpractice case in the

---

[15] *Slakman v. State*, 272 Ga. 662, 671 (6) (533 SE2d 383) (2000).

Superior Court of DeKalb County.[1]

In November or December 1996, Block and Corlew met with Penland in Atlanta to discuss financing of the Masters case. The three attorneys agreed that, in return for Penland's assistance in trying the Masters case and advancing all expenses necessary to try the case, they would divide any fees earned in the Masters case evenly among themselves.[2] Penland's name was added to the pleadings as co-counsel at that time. The construction and enforcement of this agreement form the basis of this suit.

During the course of trial preparations, Penland became ill and was unable to participate in the trial, which was scheduled for the spring of 1999. On February 27, 1999, Block and Corlew wrote a letter to Penland offering to continue the prior fee arrangement provided Penland would continue to fund the trial's expenses. Though the letter is from Block to Penland, Corlew's handwritten comments to Penland appear on the signature page. Although Penland alleges that he accepted this offer, the record before us does not contain any evidence in support of that allegation, and Corlew denies that Penland ever responded to the proposal.

Block and Corlew successfully tried the case, resulting in the funds that form the basis of this action. Corlew claims that Penland did not pay the expenses as agreed and did not assist Block and Corlew in trying the case. Corlew contends that these facts require an adjustment to the previously agreed upon fee arrangement. Penland and Block disagree.

To settle this dispute, Corlew brought an action in interpleader in DeKalb Superior Court on June 18, 1999, and deposited the outstanding attorney fees and costs in the registry of the court. On July 20, Penland answered, admitting that he is subject to the jurisdiction of the DeKalb court. But on the same day, Penland removed the case to federal district court under the interpleader provisions of Rule 22 of the Federal Rules of Civil Procedure, alleging diversity of citizenship under 28 USC § 1332. Two days after filing for removal, Penland commenced the first of four actions in the Florida courts: *Penland v. Corlew*, Case No. 99-04374 CA, Division CV-A, in Duval County, Florida, alleging breach of contract and fraud arising out of the Masters case.

On December 8, 1999, Penland filed two more cases in Duval

---

[1] During the pendency of the Masters trial, Penland & Penland dissolved, and Block and attorney Penland began practice as Penland & Block, P.A. The firm subsequently ceased practice, and Block began a solo practice as Eric S. Block & Associates. Throughout this time, Block and Corlew continued to represent Masters.

[2] While the parties do not dispute the agreement, it is unclear from the record whether it was oral or in writing.

County, Florida: *Penland v. Corlew*, Case No. 99-12511 CC, Division K, and *Penland v. Corlew*, Case No. 99-12512 CC, Division G. Both cases concerned the dishonor of checks written by Corlew to Penland. The parties dispute whether these checks constituted a payment of a personal loan Penland made to Corlew or, as is written on the bottom of each check in question, funds related to the Masters case.

Penland then filed his fourth and final Florida suit, *Penland v. Hould*, Case No. 99-07245-CA, Division CV-B, in Duval County, Florida, seeking compensatory damages allegedly suffered by Penland during his attempts to settle the dispute over expenses in the interpleader as well as punitive damages.

On February 1, 2000, the federal district court in Georgia realigned the parties in the original suit, holding that no dispute existed between Corlew and Masters. This realignment destroyed the complete diversity of citizenship required under 28 USC § 1332 for a federal interpleader action, and the district court remanded the case to DeKalb Superior Court. Shortly thereafter, Block filed both a motion for reconsideration with the federal court and a motion in the superior court to abate the federal action. Penland filed a motion to abate with the superior court on February 11, 2000.

Faced with multiple lawsuits in separate jurisdictions, Corlew and Masters sought a temporary restraining order from the Superior Court of DeKalb County seeking to enjoin Penland from prosecuting the Florida lawsuits. After a hearing, the motion was granted, and Penland appeals.

1. Penland asserts that the trial court abused its discretion in enjoining the Florida actions, contending that Corlew's action cannot be maintained because it was legally barred and unsupported by the evidence. But Corlew's action for statutory interpleader is not barred by the subsequent filing of the Florida actions. The trial court's interlocutory injunction is supported by evidence that the funds in dispute are subject to conflicting claims and that disputed facts require preservation of the status quo until those claims are resolved.[3]

The purpose of an interlocutory injunction "is to preserve the status quo of the parties pending a final adjudication of the case." (Citations and punctuation omitted.) *Bailey v. Buck*, 266 Ga. 405-406 (1) (467 SE2d 554) (1996). "The granting of injunctive relief lies in the sound discretion of the trial judge." (Citations and punctuation omitted.) *Wright v. Power Indus. Consultants*, 234 Ga. App. 833, 834 (1) (508 SE2d 191) (1998). And it is clearly settled in Georgia that

---

[3] Although Corlew and Masters sought a temporary restraining order, it is clear that the order issued by the trial court was an interlocutory injunction intended to remain in effect until final disposition of the case. See *Anderson v. Dowd*, 268 Ga. 146, 148 (3) (485 SE2d 764) (1997).

"the appellate courts will not disturb the trial court's exercise of its discretion unless a manifest abuse of discretion is shown or there was no evidence on which to base the ruling. [Cit.]" *Chambers v. Peach County*, 268 Ga. 672, 673 (1) (492 SE2d 191) (1997). We find no abuse of discretion here, for several reasons.

(a) We first note that Penland contends Corlew's DeKalb County action is inappropriate because statutory interpleader requires a pre-existing legal action. But this is not the law in Georgia. When a stakeholder finds himself in the possession of funds that are possibly subject to claims by others, an action in interpleader is appropriate. See generally *Johnson v. Mayor &c. of Carrollton*, 249 Ga. 173 (288 SE2d 565) (1982) (city holding cash seized from criminal brought interpleader action to resolve conflicting claims of bank, hospitals, and police). Statutory interpleader under the Civil Practice Act has " 'broadened and liberalized the rules relating to the remedy of interpleader so as to render the technicalities . . . associated with the equitable remedy of a strict bill of interpleader no longer applicable to complaints tried under that section.' [Cit.]" *Stone v. Davis*, 242 Ga. 17, 19 (247 SE2d 756) (1978). "Interpleader provisions . . . should be liberally construed in order that their utilitarian purposes may be best effectuated. [Cit.]" *Algernon Blair, Inc. v. Trust Co. &c. Bank*, 224 Ga. 118, 120 (160 SE2d 395) (1968). The right to statutory interpleader depends "merely upon the stakeholder's good-faith fear of adverse claims, regardless of the merits of those claims or what the stakeholder bona fide believes the merits to be." Id. at 121.

(b) Here, the record clearly shows Corlew's "good-faith fear of adverse claims." Penland's initial Florida suit against Corlew allegedly arises out of the division of fees in the Masters case and, as such, involves the funds deposited with the Georgia trial court. Similarly, Penland's fourth Florida suit seeks damages allegedly suffered by Penland in his attempt to settle expenses with Masters. Since the funds deposited with the trial court consist in part of $54,712.77 in litigation expenses related to the Masters case, this suit concerns that fund as well. Allowing these suits to proceed unabated clearly subjects Corlew and Masters to the hazard of inconsistent determinations in separate suits.

With regard to Penland's second and third Florida suits, the facts are disputed as to whether the checks were for repayment of unrelated personal loans allegedly made by Penland to Corlew or for expenses or fees incurred in the Masters case. Each check appears, from notations on its face, to be related to the Masters case, but testimony on the record indicates that a personal loan was connected in some manner with at least one check. When conflicts exist involving issues of material fact, a trial court's grant of an injunction is not a manifest abuse of discretion. *Norfolk Southern R. Co. v. Dempsey*, 267

Ga. 241, 242-243 (1) (476 SE2d 577) (1996).

(c) Finally, Penland argues that the trial court abused its discretion in enjoining his Florida actions because it had been divested of jurisdiction by Penland's filing of an action at law. He contends that Corlew's interpleader is actually a declaratory judgment action and therefore is an action in equity subject to a loss of jurisdiction through the filing of an action at law, relying on *Merrills v. Horace Mann Ins. Co.*, 214 Ga. App. 142 (447 SE2d 112) (1994). This is an incorrect statement of Georgia law.

We have held that *Merrills* does not, as Penland contends,

> stand for the sweeping proposition that a declaratory judgment action always becomes moot after the filing of a suit for damages related to the same dispute. In fact, in appropriate circumstances, we have approved the granting of an injunction to restrain the prosecution of a subsequently filed suit for damages. [Cit.]

*J. M. Huber Corp. v. Ga. Marble Co.*, 239 Ga. App. 271, 275-276 (2) (520 SE2d 296) (1999). Even if Corlew's action had been brought explicitly under the Declaratory Judgment Act, "[a] petition for declaratory judgment is an action at law, and it is not converted into an equitable action simply because a temporary restraining order is granted in order to maintain the status quo pending adjudication. [Cits.]" *Hobgood v. Black*, 144 Ga. App. 448, 450 (2) (241 SE2d 60) (1978).

2. Penland also contends that the trial court erred in failing to make a proper determination on his motion to disqualify the trial judge as required under USCR 25. USCR 25.3 requires that a trial judge presented with such a motion temporarily cease to act upon the merits of the matter and make a three-part determination as to the sufficiency of the motion. The court must consider the timeliness of the motion, the legal sufficiency of the accompanying affidavit, and whether recusal would be warranted if some or all of the facts alleged in the affidavit are true. Id. "If all three conditions precedent set forth in USCR 25.3 are not met, the trial judge shall deny the motion *on its face* as insufficient." (Emphasis supplied.) *Gibson v. Decatur Fed. Sav. &c. Assn.*, 235 Ga. App. 160, 166 (3) (508 SE2d 788) (1998).

We do not reach the merits of Penland's motion to disqualify because it was not filed in a timely manner. USCR 25.1 requires that the filing and presentation of a motion to disqualify "shall be not later than five (5) days after the affiant first learned of the alleged grounds for disqualification . . . unless good cause be shown for failure to meet such time requirements." Penland filed his motion on February 16, 2000. In his motion, Penland acknowledged that it was

not timely and asserted as good cause for delay that he had filed a motion for rehearing or reconsideration of the federal district court's remand order and that the DeKalb County court therefore did not have jurisdiction at an earlier time. Penland's contention is incorrect.

The federal court remanded this case on February 1, 2000, for lack of subject matter jurisdiction due to incomplete diversity. Under 28 USC § 1447 (d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," except in certain civil rights cases. "[T]he district court had no jurisdiction to review the remand order. . . . Unquestionably, § 1447 (d) not only forecloses appellate review, but also bars reconsideration by the district court of its own remand order." (Citations and punctuation omitted.) *Harris v. Blue Cross/Blue Shield of Ala.*, 951 F2d 325, 330 (II) (B) (11th Cir. 1992).

Section 1147 (d) applies to cases removed for lack of subject matter jurisdiction such as failure of diversity. As the Eleventh Circuit observed,

> [r]emoval in [a] diversity case, to the prejudice of state court jurisdiction, is a privilege to be strictly construed, and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. The action must not ricochet back and forth depending upon the most recent determination of a federal court.

*Harris*, supra at 330 (II) (B). Penland's argument that the five-day limit for filing his motion to disqualify did not begin to run until his motion for reconsideration was ruled upon by the federal court is without merit, since the federal court had no jurisdiction to consider such a motion. And Penland's affidavit testimony regarding an alleged statement by an unidentified federal court employee that the motion for reconsideration was being held "waiting for a response from opposing counsel" is merely hearsay and will not be considered. *Orr v. Culpepper*, 161 Ga. App. 801, 804 (288 SE2d 898) (1982).

The time for filing a motion to disqualify began to run with entry of the order to remand on February 1, 2000. Penland's motion to disqualify, filed February 16, 2000, was filed far beyond the five-day limit, and he did not demonstrate good cause for delay. The trial court therefore properly denied his motion "on its face." *Gibson*, supra at 166.

In summary, we find that the trial court did not err in staying the Florida actions. Those actions did not divest the Georgia trial court of its jurisdiction to consider the interpleader action. Since dis-

puted issues of fact affected the distribution of the funds on deposit in the registry of the trial court, the court did not manifestly abuse its discretion in granting the interlocutory injunction to preserve the status quo of the parties until adjudication of the case. Further, as appellant's motion to disqualify was not timely brought, the trial court did not err in denying the motion.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 13, 2001.

*S. Perry Penland,* pro se.
*Harold D. Corlew,* pro se.
*Gail A. Mackinson, Cynthia L. Montgomery,* for Masters.